IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-08-0177-03 |
| | § | |
| ALBERTO PENA | § | (Civil Action No. H-11-1959) |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is a motion filed by the defendant, Alberto Pena, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. # 419]. The Court has carefully reviewed all pertinent matters in this criminal case. Based upon this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court **denies** the defendant's motion and **dismisses** the corresponding civil action (No. H-11-1959) for reasons set forth below.

## I.   BACKGROUND

A federal grand jury in this district returned a multi-count indictment against Pena and others in connection with a conspiracy to commit immigration fraud. A jury found Pena guilty of conspiracy in violation of 18 U.S.C. § 371 (count 1); fourteen separate counts of immigration fraud, involving fourteen different aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv), 1324(a)(10(A)(v)(II), and 1324(a)(1)(B)(i) (counts 2-15), and 1 count of engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957 (count 17). On December 14, 2009, this Court sentenced Pena to serve a total of 41 months imprisonment as to each of counts 1 through 15, and 17, to run

concurrently, followed by a 3-year term of supervised release.  [Doc. # 292, *Judgment*]. The Court also imposed a special assessment of $100 as to each of count of conviction (counts 1-15, 17), for a total of $1,600.00. [*Id.*].

On direct appeal, Pena challenged the admissibility of certain evidence, among other things.  The Fifth Circuit affirmed the conviction in an unpublished opinion. *See United States v. Pena*, No. 09-20870, 2011 WL 902468 (5th Cir. March 16, 2011).

Pena now seeks relief from his conviction and sentence under 28 U.S.C. § 2255.  Pena contends that he is entitled to relief from his conviction and sentence because (1) Pena's trial attorney falsely claimed that Pena had a "drinking problem," which caused the Court to impose "special conditions of supervision" upon his release from prison; (2) the special assessment imposed for each count of conviction constitutes "multiple punishment" in violation of the "concurrent sentence doctrine"; and (3) his trial and appellate attorneys were ineffective for failing to argue that the special assessment was an illegal financial penalty. The Court concludes that Pena is not entitled to relief for reasons outlined briefly below.

## II.   <u>STANDARD OF REVIEW</u>

To obtain collateral relief under 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).  "Following a conviction and exhaustion or waiver of the right to direct appeal, [courts] presume a defendant stands fairly and finally convicted." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under [§] 2255 ordinarily is limited to questions of constitutional or jurisdictional

magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Frady*, 456 U.S. at 166. Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel, "since no opportunity existed [before the district court] to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987); *see also Massaro v. United States*, 538 U.S. 500 (2003).

Pena proceeds *pro se* in this matter. "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997). Nevertheless, *pro se* litigants are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.   **DISCUSSION**

3

### A.    Claims Concerning Special Conditions of Supervision

Pena seeks relief primarily from a special condition of supervision that pertains to an alleged problem with alcohol abuse.  Pena complains that, although he denied having a drinking problem when he was interviewed by the probation officer who prepared the Pre-Sentence Investigation Report (the "PSR"), his defense counsel raised the following "substance abuse issue" in an effort to reduce his potential sentence of imprisonment:

> COUNSEL:  I know that [the prosecutor] has objected, saying that it is essentially an argument made by counsel to try to get less confinement for his client. And it would be disingenuous of me to say that that's not the case.
>
> But as an advocate, I have to advocate what's there for me.  And I do know from talking to Mr. Pena that he, like a lot of people that have drinking problems, is in a bit of denial about it.
>
> And I really realized how bad he was in denial by talking to his brother, Bernardo Pena, about Alberto's drinking.  So, you know, to the extent that he might tell a probation officer he doesn't think he has much of a problem, the fact is that others that are close to him have told me yes, he has a problem.
>
> So again, your Honor, I think this is something that he's looking at incarceration.  If this is a[n] opportunity for him to get some needed care and to be better when he comes out, I'm all for it.  And I'd ask you to consider that very carefully.

[Doc. # 361, *Sentencing Trans.*, at 34].  Pena claims that he was "shocked and surprised" by his lawyer's argument and he insists that his attorney's comments were untrue, because he does not have a drinking problem.

Pena maintains that he is entitled to relief under 28 U.S.C. § 2255 because he does not need treatment for alcohol abuse.  Pena complains that, based on his attorney's statements

during the sentencing proceeding, this Court recommended that he participate in a drug or

alcohol treatment program. [Doc. # 361, *Sentencing Trans.*, at 48].  The Court did not

recommend the 500-hour Residential Drug Alcohol Program ("RDAP") that is available to

certain offenders who qualify to participate while incarcerated in the United States Bureau

of Prisons. [*Id.* at 48].  However, the Court imposed the following "special conditions of

supervision" on his release from imprisonment:

> The defendant shall participate in a program, inpatient or outpatient, for the
> treatment of drug and/or alcohol addiction, dependency or abuse which may
> include, but not be limited to urine, breath, saliva and skin testing to determine
> whether the defendant has reverted to the use of drugs and/or alcohol.  Further,
> the defendant shall participate as instructed and as deemed necessary by the
> probation officer and shall comply with all rules and regulations of the
> treatment agency until discharged by the Program Director with the approval
> of the probation officer.  The defendant shall further submit to drug-detection
> techniques, in addition to those performed by the treatment agency, as directed
> by the probation officer.  The defendant will incur costs associated with such
> drug/alcohol detection and treatment, based on ability to pay as determined by
> the probation officer.

[Doc. # 292, *Judgment*, at 5].  Pena notes that he has completed a drug abuse education

course and a drug/alcohol treatment course while in prison, and that his counselor at the

Bureau of Prisons has determined that he does not have a problem.  Pena argues, therefore,

that any requirement that he participate in additional alcohol or drug treatment following his

release from prison will be unduly burdensome and unnecessary.  Therefore, Pena seeks

relief from this special condition of supervised release.

Challenges to conditions of supervised release are not authorized for review under 28

U.S.C. § 2255, which is reserved for transgressions of constitutional rights and for a narrow

range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). The record reflects that Pena did not disagree with his lawyer's comments when it was Pena's turn to speak at the sentencing hearing.  Likewise, Pena did not object to the conditions of supervised release during his direct appeal.  Because Pena could have, but did not, challenge this condition on direct appeal, it appears that his claim is barred from review under 28 U.S.C. § 2255.  *See United States v. Hatten*, 167 F.3d 884, 886-87 (5th Cir. 1999); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994).

Alternatively, a motion filed under 28 U.S.C. § 2255 is not the appropriate vehicle for challenging the conditions of release.  A defendant may seek relief from conditions of supervised release by filing a motion under 18 U.S.C. § 3583(e), which governs the modification of such conditions.  Because Pena has not been released from prison, he is not currently subject to the conditions of supervision that are listed in the judgment.  Because it is a matter of conjecture whether Pena's probation officer will require drug or alcohol treatment in addition to the courses that he has already completed while in prison, Pena's request for a modification of the conditions of his release is not ripe for consideration.  *See United States v. Carmichael*, 343 F.3d 756, 761-62 (5th Cir. 2003).  Therefore, Pena's motion for relief from the special conditions of release must be denied, at this time, as premature.

### B.  Claims Concerning the Special Assessment

Pena also complains about the special assessment that was imposed in the judgment.

6

As noted above, the Court imposed a special assessment of $100 as to each of the 16 counts of conviction (counts 1-15, 17), for a total of $1,600.00 [Doc. # 292, *Judgment*].  In imposing the special assessment, the Court directed Pena to contribute "half of his prison earnings under the Inmate Financial Responsibility Program" until the full amount was paid. [Doc. # 361, *Sentencing Tran.*, at 61].  Noting that the Court imposed a concurrent sentence of 41 months' imprisonment for these counts, Pena complains that the cumulative special assessment imposed for each count of conviction constitutes multiple punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment and violates the "concurrent sentence doctrine."[1]  This argument fails to state a valid claim for relief under 28 U.S.C. § 2255 for more than one reason, as set forth briefly below.

Pena did not object to the special assessments at sentencing or during his direct appeal.  A challenge to the restitution or fine portion of a sentence is a non-constitutional issue relative to sentencing that should be raised on direct appeal and not for the first time in a § 2255 proceeding. *See United States v. Hatten*, 167 F.3d 884, 887 n.5 (5th Cir. 1999); *United States v. Segler*, 37 F.3d 1131, 1135 (5th Cir. 1994).  To the extent Pena complains about the way he was sentenced, he cannot raise a claim of this type for the first time in a § 2255 motion.  *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (holding that the district court's application of the Sentencing Guidelines does not give rise to a claim

---

[1]     The concurrent sentence doctrine provides that "the existence of one valid sentence makes unnecessary the review of other sentences that run concurrently with it." *United States v. Soape*, 169 F.3d 257, 266 n.4 (5th Cir. 1999).

cognizable under § 2255).  Thus, his claim concerning the special assessments is barred by the doctrine of procedural default.  *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (observing that "review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice").

Alternatively, Pena's claim concerning the special assessment as a monetary penalty is insufficient to invoke subject matter jurisdiction under 28 U.S.C. § 2255, which affords relief only for prisoners who are "in custody under a sentence" imposed in federal court.  28 U.S.C. § 2255(a).  In that respect, a monetary penalty is not a sufficient restraint on liberty to meet the "in custody" requirements of § 2255. *Hatten*, 167 F.3d at 887; *Segler*, 37 F.3d at 1167; *see Spring v. Caldwell*, 692 F.2d 994, 998-99 (5th Cir. 1982).  Accordingly, Pena fails to state a claim for which relief can be granted under § 2255.

More importantly, Pena does not show that the special assessment was imposed unlawfully in his case or that he is entitled to relief under any valid theory.  Special assessments are required by statute.  *See* U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇs Mᴀɴᴜᴀʟ § 5E1.3 ("A special assessment must be imposed on a convicted defendant in the amount prescribed by statute.").  The statute that applies to Pena mandates a special assessment of $100 for each offense that he committed.  *See* 18 U.S.C. § 3013(a)(2).  The jury found Pena guilty of 16 separate counts or offenses outlined in the indictment.  Consistent with the jury's findings, the Court imposed a special assessment of $1,600.00 in compliance with the applicable law.

Pena does not otherwise demonstrate that the special assessments violated the

8

prohibition against multiple punishments found in the Double Jeopardy Clause. The Double Jeopardy Clause, contained in the Fifth Amendment to the Constitution, states that no person shall "be subject for the same offense twice to be put in jeopardy of life or limb." U.S. CONST. amend. V.  This clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *See United States v. Usery*, 518 U.S. 267, 273 (1996). In this instance, Pena was convicted of 1 count of conspiracy in violation of 18 U.S.C. § 371, 14 counts of immigration fraud, involving 14 different aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv), 1324(a)(10(A)(v)(II), and 1324(a)(1)(B)(i), and 1 count of engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957, for a total of 16 separate and distinct offenses.  Pena does not show that, by imposing a $100.00 special assessment for each count of conviction, he was punished multiple times for a single act.  *See United States v. Lopez*, No. 09-29724, 2011 WL 1899532, *2 (5th Cir. May 19, 2011) (unpublished) (holding that consecutive special assessments for each count of conviction were did not violate the Double Jeopardy Clause, even though the sentence of imprisonment was concurrent, because the defendant was sentenced for separate and distinct offenses).  Under these circumstances, Pena does not establish a double jeopardy violation.

### C.    Claims of Ineffective Assistance of Counsel

Pena argues further that his trial and appellate attorneys were ineffective for failing to object or argue that the special assessments resulted in an "extra financial penalty." The Sixth Amendment to the United States Constitution guarantees criminal defendants the right

to have the assistance of counsel at trial.  *See* U.S. CONST. amend. VI;  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).  Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prevail under this standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.  "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.*

A claim of ineffective assistance on appeal is governed by the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal). To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

Pena was represented at trial by Michael Clark, and he was represented on appeal by Seth Kretzer. As outlined above, Pena has not shown that the special assessment was imposed in his case improperly or that he was subjected to multiple penalties in violation of the Double Jeopardy Clause. Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Pena fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia*

11

*v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").  Because Pena has failed to establish a valid ineffective-assistance claim, he fails to show that he is entitled to relief under 28 U.S.C. § 2255 and his motion must be denied.

## IV.   CERTIFICATE OF APPEALABILITY

The defendant's post-judgment motion for relief from his conviction and sentence is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253.  Therefore, a certificate of appealability is required before an appeal may proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the movant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a movant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the movant must show not only that

12

"jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Nor would jurists of reason debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct. Because the defendant does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.   CONCLUSION

Because the defendant has failed to establish an error of constitutional or jurisdictional magnitude, he is not entitled to relief under 28 U.S.C. § 2255. Accordingly, the Court **ORDERS** as follows:

1.   The defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 [Doc. # 419] is **DENIED** and the corresponding civil action (H-11-1959) is **DISMISSED** with prejudice.

2.   A certificate of appealability is **DENIED**.

The Clerk's Office will provide a copy of this order to the parties and will file a copy of this order in the corresponding civil case (Civil Action No. H-11-1959).

SIGNED at Houston, Texas, on June 30, 2011.

Nancy F. Atlas
United States District Judge